## No. 10,375.

### HOPE & CO. vs. THE BOARD OF LIQUIDATION.

The State Board of Liquidation, in order to carry out the objects and purposes for which it was created, has the inherent power to make rules and regulations prescribing the mode of procedure before it, provided they do not contravene the Constitution and laws of the State. And during the existence of said rules, it is not in the discretion of the board to suspend the rules to suit a particular case. Therefore, persons holding claims which are fundable must comply with the rules and regulations of the Board of Liquidation, and cannot expect the board to suspend its rules so as to do away with the requirement to file the claim with the Auditor on the blank form to be furnished by him.

APPEAL from the Civil District Court, Parish of Orleans. *Ellis*, J.

*Henry Denis* and *Farrar, Kruttschnitt & Jonas* for Plaintiffs and Appellants:

The Funding Law does not provide that the demand of the bondholder for funding should be made of the Board of Liquidation in any particular manner or form. If the bonds to be funded are questioned or questionable, the Supreme Court is the sole arbiter of their fate. The refusal of the board to pass upon them is a questioning of their validity, and equivalent to their rejection. Acts No. 3 of 1874 and No. 11 of Extra Session of 1875; State ex rel. Meyers vs. Board of Liquidation, 33 Ann. 124.

The Funding Law is an offer of compromise by the State to her creditors, which she is desirous that they should accept, and which she accompanies, for that reason, with inducements of an extraordinary character. Board of Liquidation vs. McComb, 92 U. S. 539.

The refusal of the board to pass upon plaintiffs' demand is a failure of their duty and an obstruction of the law, which the act forbids under heavy penalties. Act No. — of 1874, Sec. 10.

Conditions precedent cannot be made to depend upon the will of the party who imposes them. They are waived if their performance is rendered impossible by that party himself. C. C. Arts. 2034-5; Wharton's Contracts, Vol. 1, Sec. 603; Peck vs. United States, 102 U. S. 64.

Agents of the State cannot plead their own wrong. The doctrine of estoppel applies to them, as it applies to the State herself. 28 Ann. 122; 28 Ann. 460.

The Board of Liquidation cannot be mandamused to fund the bonds. 29 Ann. 264; 29 Ann. 690.

Nor to meet and pass upon the bonds, inasmuch as they have necessarily some degree of discretion in that respect. State ex rel. Daboval vs. Police Jury, 39 Ann. 759; State ex rel. Johnson vs. Righter, Judge (not yet published).

The Governor cannot be mandamused as such. State ex rel. Oliver vs. Governor, etc., 22 Ann. 1.

The Governor, in relation to the Board of Liquidation, is only a member thereof, and cannot control it, inasmuch as the Funding Law provides that a majority of said board shall be required to perform an official act. Act No. 11 of Extra Session of 1875, Sec. 3.

The Funding Law has, by specific provisions, put the execution of the funding scheme and reduction of the public debt in the hands of a special body, created for that purpose, the Board of Liquidation, and has, thereby, taken away that important matter from the Executive Department of the State. Acts No. 3 of 1874; No. 11 of Extra Session of 1875; No. 58 of 1877; No. 77 of Extra Session of 1877; No. 103 of 1888.

---

*Walter H. Rogers*, Attorney General, for Defendants and Appellees:

No right of action exists under provisions of Act No. 3 of 1874 to determine the validity of bonds of the State of Louisiana issued prior to 1874—until said bonds have been duly presented to the "Board of Liquidation" and passed upon by said board. 31 Ann. 273.

---

The opinion of the Court was delivered by

McEnery, J. The plaintiffs brought this suit to have declared legal and valid obligations of the State, and to have funded into constitutional bonds 9042 bonds, each for the sum $444 44, issued in pursuance of Act approved 3d January, 1836.

The prayer of the petition is "that there may be judgment in petitioner's favor against said Board of Liquidation and against the State of

Louisiana, as represented by said board, decreeing and adjudging that the 9042 bonds held by your petitioners, as aforesaid, and issued to the Citizens' Bank, as aforesaid, are valid and legal obligations against the State of Louisiana " * * * * * * * * *
And ordering and commanding the said Board of Liquidation to receive the said bonds and the coupons thereof from your petitioners and to issue and deliver to them in exchange thereof consolidated bonds of the State of Louisiana to the amount of $2,411,175 88."

The State, through the Board of Liquidation, filed several exceptions to the suit, only one of which was passed upon by the judge *a quo*. The exception that no demand was made upon the Board of Liquidation was sustained and the suit was dismissed.

The plaintiffs, through their attorneys, addressed the following communication to the Board of Liquidation:

To the Honorable The State Board of Liquidation:

Gentlemen — I am commissioned by Messrs. Hope & Co., of Amsterdam, to demand of you to fund and exchange for consolidated bonds of Louisiana, under provisions of Act No. 3 of the Legislature of 1874, nine thousand and forty bonds of the State of Louisiana, each for the sum of $444 44, issued under the terms and provisions of an Act of January 30, 1836, payable to the order of, and indorsed by the president and directors of the Citizens' Bank of Louisiana.

I respectfully request an early answer to the demand of my clients, and remain, gentlemen,

Very truly, yours,

HENRY DENIS, Attorney.

The board not being in session could not act by individual vote of its members and fund the bonds, as requested. The secretary of the board could very well have ignored this extraordinary request, and, without violating any rules of propriety, could have abstained from replying to the same.

But the Auditor of the State courteously replied to the communication, as follows:

STATE OF LOUISIANA, ⎞
Auditor's Office, ⎬
Baton Rouge, January 24, 1889. ⎠

Mr. Henry Denis, Attorney at Law, 173 Common Street. New Orleans, La.:

Dear Sir — Your favor of the 21st instant, in reference to bonds issued under an Act of 1836, payable to the order of and indorsed by the president and directors of the Citizens' Bank of Louisiana, will be submitted to the Board of Liquidation at the next meeting.

There being no business before the board at the time, I can not say when there will be a meeting, probably not before April or May next.

Yours, truly,

O. B. STEELE,

Auditor and *Ex-Officio* Secretary of Board of Liquidation.

A letter was addressed to the Governor of the State, in which the attorney for Hope & Co., says:

"I have received an answer from the Auditor of the State and ex-officio Secretary of the Board of Liquidation, informing me that there being no business before the board at this time, he cannot say when there will be a meeting, probably not before April or May next.

"Considering the importance and magnitude of the matter to be laid before the board in the demand of Messrs. Hope & Co., I respectfully request your Excellency to call a special meeting of the board to that effect. Very truly yours, HENRY DENIS, Attorney."

The Governor did not reply to this communication, and did not call a special meeting of the board.

The attorney for Hope & Co., after this letter was written to the Governor, addressed a communication to each member of the Board of Liquidation, in which he says:

"Considering that the action of the board in the premises, through its president and secretary, is a clear evasion of the law, I respectfully notify you that after the 1st of March, 1889, if the board, in the mean-time, has not met and passed upon the demand of Messrs. Hope & Co., I will commence legal proceedings against it and deem its refusal as equivalent to a refusal to fund the bonds in question." In view of the fact that the plaintiffs had a clear and unequivocal way of proceed-ing to have their bonds passed upon by the Board of Liquidation, it is clear that the above communications could not be reasonably construed as a formal demand within the meaning of the law and as evidence of refusal by the board.

The funding laws, in creating the Board of Liquidation, and confer-ring upon it powers and duties to fund and exchange for others certain bonds and warrants, described in Act 3 of 1874, did not prescribe any rules or mode of procedure by which the board should regulate its own proceedings, and the mode and manner in which the claims should be presented and prosecuted to final action.

It had, therefore, in order to carry out the objects and purposes of its creation, the power to make rules and regulations as to the mode of pro-cedure before it, and the manner and form in which claims should be presented for its consideration. The Board of Liquidation, in this respect, is like a court of record. and every court of record has the inherent power to make rules for the transaction of its business, and to alter, amend or repeal them, provided they do not contravene the Con-stitution and laws of the State. And while in force they must be applied to all cases alike which fall within them. It was not, therefore, in the discretion of the Board of Liquidation, any more than in that of a court, to suspend its rules in its discretion to meet a particular case, unless such discretion is authorized by the rules themselves.

In 1877, the Board of Liquidation, by resolution, established a rule that applicants for funding claims against the State, under its laws, must file them, on blank forms, prepared for the purpose, with the Auditor of Public Accounts, who is ex-officio secretary of the board. This rule is a law to all parties who transact business before the board. It is a maxim "the practice of the court is the law of the court," and in this respect the rules and regulations of the Board of Liquidation are as binding on all those who apply to it for relief as the rules of court are upon litigants.

The want of knowledge, on the part of the attorney of Hope & Co., of the rules of the Board of Liquidation as to the manner in which claims should be presented, is no excuse for a non-compliance with them.

Without having complied with the mode of procedure established by the board, the plaintiffs' attorney notified the board, and each member thereof, they had bonds which they wanted funded, and demanded a special session, in their interest, to fund said bonds.

With equal propriety a litigant might withhold his petition from the docket of the court, and ask the judge to give him a judgment when he deemed it convenient to present his claim.

The only reason assigned for the exceptional demand made by the plaintiffs on the Board of Liquidation is the importance and magnitude of the demand, which is in the vast amount involved. The law takes no account of the greatness of the demand. Gold and copper weigh alike in the scales of justice.

Plaintiffs claim that the failure of the board to meet in special session to consider and pass upon their demand is equivalent to its rejection. The Board of Liquidation has been in existence for fourteen years, and as we understand, holds sessions for the funding of obligations, when there is business sufficient to justify the same.

Plaintiff's claim had never been filed, and was not, therefore, before the board, and he has no reason to complain of inaction. There was no occasion for a meeting of the board, as from the Auditor and ex-officio secretary of the board's statement there were no claims on file for consideration.

Plaintiffs contend that their bonds are "questioned," and, therefore, they have a right to sue under Act 11 of 1875, without having first presented them to the Board of Liquidation.

Previous to the Act 11 of 1875, parties holding rejected bonds or warrants had no remedy.

Act 11 authorizes a suit on "questioned" bonds or warrants. It is not every rumor, statement, or suspicion that can authorize a resort to

the courts; and because obligations are questioned is no reason why they should not be presented to. the Board of Liquidation for action. Claims must be presented to the Board of Liquidation and passed upon before there can be a judicial inquiry. The State has given permission for a certain class of obligations to be presented by the holders of them to Louisiana courts for determination as to their validity, and thus, in authorizing suit against herself, she has pointed out the channel through which it must reach the courts and it must be followed.

Any taxpayer is authorized by Act 11 of 1875 to bring suit against the Board of Liquidation to test the validity of any bonds issued by the State on warrants drawn previous to the passage of Act 3 of 1874.

If the bonds or warrants are rejected by the board, it is clear the taxpayer has no interest in the bringing of the suit. This right to sue the board is, therefore, dependent upon the action of the board, and the bond or warrant must have been presented to the board and favorably acted upon by it. And the board must take some action adverse to the holder of the bond or warrant before his right accrues to test the validity of his claim. For those bonds and warrants which are not questioned in Act 11 of 1875, the fact of their validity must be raised by the Board of Liquidation by its favorable or unfavorable action.

The right to sue to test the validity of these must spring from the board. The bond or warrant holder certainly has no cause to complain and consequently no cause of action if his bond or warrant is ordered funded and exchanged.

The bonds of the plaintiffs have not been presented to the Board of Liquidation and have not been rejected by the board. They are, therefore, not entitled to an order commanding the board to fund and exchange said bonds for consolidated bonds, because the board has not refused to do that which they are now asked to do.     Bartlette vs. Board of Liquidation, 31 Ann. 573.

Judgment affirmed.